UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| JAMES R. DALTON | ) |
| Plaintiff | ) |
| | ) |
| V. | ) |
| | ) |
| GE JOB AND INCOME SECURITY PLAN | ) |
| FOR HOURLY AND CERTAIN NON- | ) |
| EXEMPT SALARIED EMPLOYEES; | ) |
| GE HEALTH BENEFITS FOR PRODUCTION | ) |
| EMPLOYEES PLAN; | ) |
| GE PENSION PLAN; and | ) |
| GENERAL ELECTRIC COMPANY | ) |
| Defendants | ) |
| | ) |

## **COMPLAINT**

### **Introduction**

This is an ERISA claim by the Plaintiff, James R. Dalton, to recover benefits denied

when the General Electric plant at which he worked in Somersworth, New Hampshire closed.

To the extent that any of the benefits the Plaintiff lost were not part of an ERISA plan, this also

is a claim against General Electric Company and GE Grid Solutions, LLC for breach of contract

and/or negligent or intentional misrepresentation.

The Somersworth New Hampshire GE site closed its industrial transformer division

relocating it to Florida and sold its electronic meter division to a division of Aclara.

Aclara continued to operate the meter division and took on the GE meter division clients and

employees.  The GE transformer division employees were given the option of transferring to a

Florida location or accepting plant closure benefits including but not limited to:  severance;

certain free medical insurance benefits for 1 year; certain reduced medical insurance premiums; dental insurance benefits; life insurance benefits, Special Early Retirement Option benefits ("SERO") and/or preferential placement benefits. The Plaintiff, a transformer division employee, was mistakenly misclassified as a meter division employee and transferred to Aclara.

The Plaintiff was denied all of the GE plant closure benefits when GE misclassified the Plaintiff's position as being within the GE meter division. Because of this misclassification, the Plaintiff's employment was transferred to Aclara where ultimately Aclara found that there was no need for his mechanical maintenance services. The Plaintiff was a GE tool room/facilities maintenance employee with the job title Mechanic Machinist. During the majority of his time at GE he worked within the transformer division. His job focused on the mechanical (not electrical) repair, maintenance and support of GE's transformers. The transformer division required continual preventative and remedial maintenance due to the highly mechanical nature of the very old machines throughout the department. The Plaintiff does not and did not have the electrical expertise of the GE employees in the meter division. Those employees worked on electronic units requiring an entirely different (electrical) skill set and largely were electronic technicians and electricians.

The Plaintiff should have been given the option to transfer to Florida or accept the plant closure benefits as were others at the GE Somersworth NH location who performed mechanical work in the transformer division (e.g. the same job as the Plaintiff). The mistaken transfer of the Plaintiff to Aclara ultimately left the Plaintiff unemployed and without the GE plant closure benefits to which he should have been entitled. Because of the error, the Plaintiff and his disabled wife have experienced hardship including a loss of/reduction in income and lost health, dental, and life insurance benefits.

**Parties**

1.      Plaintiff is James R. Dalton, a resident of Rochester, Strafford County, New Hampshire. He was born on June 22, 1956.

2.      Defendant is General Electric Company which had a plant in Somersworth, New Hampshire where the Plaintiff worked.  It is believe the General Electric headquarters is presently located at 41 Farnsworth Street Boston, MA, 02210.

3.      Defendant is GE Pension Plan of which General Electric Company is the ERISA, statutory plan sponsor and statutory plan administrator.  The present mailing address for the administrator is believed to be P.O. Box 5000, Schenectady, New York 12301.

4.      Defendant is GE Job and Income Security Plan for Hourly and Certain Nonexempt Salaried Employees of which General Electric Company is the ERISA, statutory plan sponsor and statutory plan administrator.  The present mailing address for the administrator is believed to be P.O. Box 5000, Schenectady, New York 12301.

5.      Defendant GE Health Benefits for Production of Employees is a GE welfare plan of which General Electric Company is the ERISA, statutory plan sponsor and statutory plan administrator.  The present mailing address for the administrator is believe to be P.O. Box 5000, Schenectady, New York 12301.

**Jurisdiction and Venue**

6.      This Court has original jurisdiction for claims for benefits arising under 29 U.S.C. § 1132.

7.      Venue is proper before this Court, because all defendants are or were engaged in business in the state of New Hampshire and the plaintiff resides in the state of New Hampshire.

**8.**      Venue also is proper because the benefit plans covered the Plaintiff and other

employees of General Electric Company at the Somersworth, New Hampshire General Electric
Company location.

## Facts Common to All Counts

9.      At all times material hereto, before the sale to Aclara, James R. Dalton was employed
on a full-time basis as an hourly Mechanic Machinist in the transformer division at the Somersworth,
New Hampshire location of General Electric Company.

10.     On his termination date of December 31, 2015, Plaintiff had over 38 years of service
with General Electric Company.

11.     On his termination date of December 31, 2015, Plaintiff had over 25 years of Pension
Qualification Service ("PQS") with General Electric Company.

12.     On his termination date of December 31, 2015, Plaintiff had over 25 years of Pension
Benefit Service ("PBS") with General Electric Company.

13.     The majority of the Plaintiff's paychecks were written by "General Electric Company
as disbursing agent for General Electric Company."

14.     Some of the Plaintiff's paychecks were written by "General Electric Company as
disbursing agent for GE Grid Solutions, LLC."

15.     General Electric Company provided to its employees a pension plan referred to as the
"GE Pension Plan" administered by General Electric Company with a summary plan description
dated January 1, 2012.

16.     The GE Pension plan is subject to and governed by ERISA.

17.     General Electric Company provided to its employees a job loss benefit plan referred
to as the "GE Job and Income Security Plan for Hourly and Certain Nonexempt Salaried Employees"
(hereinafter the "GE Job and Income Security Plan") administered by General Electric Company
with a summary plan description dated January 1, 2012.

18.     The GE Job and Income Security Plan is subject to and governed by ERISA.

19.     The GE Job and Income Security Plan establishes benefits that eligible employees are to receive if they experience job loss for certain established reasons and addresses how their pension and welfare benefits will be treated as a result of the job loss.

20.     General Electric Company provided to its employees a welfare plan referred to in the GE "Eligibility and Administrative Information" handbook dated January 1, 2012 as Plan Number 553 and entitled "GE Health Benefits for Production Employees" (hereinafter the "GE Health Benefits Plan"). The GE Health Benefits Plan is administered by General Electric Company and is described in a summary plan description dated January 1, 2012.

21.     The plan entitled "GE Health Benefits for Production Employees" is subject to and governed by ERISA.

22.     The plan entitled GE Health Benefits for Production Employees included health insurance benefits, dental care benefits, vision care benefits, life insurance benefits, accidental death or dismemberment insurance, short and long-term disability insurance, and long-term care insurance.

23.     The GE benefit plans referenced in Paragraphs 16 – 22 are described in summary plan description handbooks dated January 1, 2012 which were still effective on December 31, 2015 when Mr. Dalton's employment with General Electric Company was terminated.

24.     Mr. Dalton was a "participant" in the GE Pension Plan, as defined by ERISA, 29 U.S.C. § 1002(7).

25.     Mr. Dalton was a "participant" in the GE Job and Income Security Plan, as defined by ERISA, 29 U.S.C. § 1002(7).

26.     Mr. Dalton was a "participant" in the plan entitled GE Health Benefits for Production Employees as defined by ERISA, 29 U.S.C. § 1002(7). He elected Option 1 – Two Person for him and his wife under that plan and had health, dental, vision, life, and disability insurance and a flexible health spending account.

27.     In November, 2015, Mr. Dalton learned that:  General Electric Company would be

selling its meter division to Aclara; General Electric Company had misclassified him as an employee

of the meter division; and his employment would be transferred to Aclara with the meter division so

that he would not be considered eligible for job loss/plant closure benefits under the GE Job and

Income Security Plan.

28.     On or about November 12, 2015, Mr. Dalton had a conversation with Edward

Myszka who was a member of General Electric Company management.  During this meeting, Mr.

Myszka discussed with Mr. Dalton the misclassification and shook his hand saying that "we can

change it to transformer."

29.     On November 12, 2015, Mr. Dalton sent an email to Edward Myszka, General

Manager of the Plant of General Electric Energy Management with a copy to Joyce Vachon, GE

Human Resources Manager and Susan Montross, GE Somersworth Plant Manager all of General

Electric Energy Management following up on his conversation with Mr. Myszka and identifying and

attaching evidence supporting his assertion that he was a transformer division employee for his 38

years of service.

30.     On November 23, 2015, Mr. Dalton sent an email to Ms. Vachon to follow up on his

November 12, 2015 email and referring to the evidence he attached to the prior email in support his

assertion that he was an employee in the transformer division.

31.     On or about November 25, 2015, Edward Mysdza sent an email to Mr. Dalton

stating: "After careful review of all the information provided we have decided that you will remain

with the Meters business."

32.     Mr. Dalton's employment with General Electric Company ended on December 31,

2015 when his employment was transferred to Aclara Meters, LLC effective January 1, 2016.  He

was 59 ½ years old.

33.     The GE transformer division did not finalize its move to Florida until July 1, 2016

which is the date on which the transformer employees experienced termination of their employment.

34.     On July 1, 2016, Mr. Dalton was 60 years old.

35.     Mr. Dalton worked for Aclara for a little more than one year (from January 1, 2016 to September 1, 2017) after which Aclara laid him off because it did not have a need for an employee with his mechanical experience.  For the first eight months with Aclara, Mr. Dalton worked to decommission the General Electric transformer division footprint.

36.     If Mr. Dalton had been properly classified by GE as an employee of the transformer division, he would have been 60 years old upon termination of his employment on July 1, 2016.

37.     If Mr. Dalton had been properly classified by GE as an employee of the transformer division, he would have received plant closure benefits provided by the GE Job and Income Security Plan as indicated in Sections 1.6 – 1.9 of the Job Loss Benefits Handbook.  He did not receive those benefits.

38.     If Mr. Dalton had been properly classified, he would have received approximately $87,000 in severance pay in accordance with the GE Job and Income Security Plan as indicated in Section 1.6.4 of the Job Loss Benefits Handbook and job transition assistance in accordance with Section 1.6.7.  He did not receive those benefits.

39.     If Mr. Dalton had been properly classified, he could have chosen to receive "Preferential Placement" status in accordance with the GE Job and Income Security Plan as indicated in Section 1.8 of the Job Loss Benefits Handbook. He was not able to choose that benefit because his transfer made it such that he was not considered to have experienced a plant closing job loss.

40.     If Mr. Dalton had received Preferential Placement status, he could have applied to the GE aircraft division at the Hooksett, New Hampshire location which hired some of Mr. Dalton's transformer division co-workers in early 2016. He did not receive that benefit.

41.     If Mr. Dalton had been placed in a new position with GE pursuant to the Preferential Placement status, he would not have had to return the severance pay that he received.  The Job Loss Benefits Handbook states:

"If you are placed from Preferential Placement status, you will receive immediate restoration of prior service credits and continuity of service, plus you will receive service credits for the period of your absence, up to 12 months, effective when the new placement occurs.  You do not need to repay any weekly or lump-sum IEA benefits or severance benefits you received while on Preferential Placement status."

GE Job and Income Security Plan summary plan description dated January 1, 2012.

42.     If Mr. Dalton had been properly classified, he would have received continuation of his health insurance premium (which included Part B Medicare for his disabled spouse) at no cost to him for 12 months in accordance with the GE Job and Income Security Plan as indicated in Section 1.7.1 of the Job Loss Benefits Handbook and be entitled to continue on that plan until age 65 at $233 per month.  He did not receive that benefit.

43.     Because Mr. Dalton was not properly classified, he now must pay $655.46 per month (which is the Special Benefit Protection rate) for health insurance that does not include Part B Medicare and does not include Dental.   This will continue until age 65 and will result in a loss of more than $23,000.

44.     If Mr. Dalton was properly classified, his termination date would have been July 1, 2016 and he would have been 60 years old.  He could have continued his Part B Medicaid coverage for his wife at the rate of $116 per month until age 65.  He did not receive this benefit.  Mr. Dalton has not yet calculated the dollar amount of this loss.

45.     Before being misclassified and transferred to Aclara, Mr. Dalton had dental coverage through GE Dental Care for himself and his disabled wife.

46.     If Mr. Dalton had been properly classified, he would have received continuation of his dental coverage premium at no cost to him for 12 months in accordance with the GE Job and Income Security Plan as indicated at Section 1.7.2 of the Job Loss Benefits Handbook. He did not receive that benefit. The monetary loss for this has not yet been calculated.

47.     If Mr. Dalton had been properly classified, he would have received continuation of

his reduced basic life insurance coverage at no cost to him life valued at $15,000 pursuant to Section 1.9.3 in the GE Job and Income Security Plan summary plan description dated January 1, 2012 and the "Retiree Health and Other Benefits" handbook dated January 1, 2012. He did not receive that benefit.

48.     If Mr. Dalton had been properly classified, he could have been eligible for the Regular Supplement and the Special Supplement to his retirement income under the GE Pension Plan as indicated in Sections 3.4.8 - 3.4.10 of the Retirement Income Benefits Handbook by: i) choosing "Preferential Placement" status in accordance with Section 1.8 of the Job Loss Benefits Handbook; ii) securing continued employment with General Electric Company at a different location; and then iii) retiring directly from General Electric Company at age 60.

49.     Because of the misclassification, Mr. Dalton did not receive the Special Supplement. Mr. Dalton estimates that this is a monetary loss of approximately $14,700.

50.     If Mr. Dalton had been properly classified, he would have been entitled to choose one of the following GE Pension Plan early retirement benefit options in accordance with the GE Job and Income Security Plan as indicated in Section 1.9.1 – 1.9.4 of the Job Loss Benefits Handbook including:  the Special Early Retirement Option (SERO) – which would have allowed him to retire immediately with full benefits; or the Plant Closing Pension Option (PCPO) – which would have allowed him to retire immediately with full benefits; or the Special Supplement Benefit Option (SSBO) – which at a minimum would have been payments of $400 per month from age 60 for 40 months.  He did not receive that benefit.  Mr. Dalton estimates that this is a monetary loss of approximately $18,000.

51.     On September 1, 2017, Mr. Dalton's employment with Aclara was terminated because Aclara did not need an individual with the mechanical, non-electrical, skill sets.

52.     On December 13, 2017, Mr. Dalton wrote to GE Energy Connections H.R. Manager and GE Energy Connections Sr. Labor counsel via certified letter explaining the misclassification

error and enclosing five exhibits.  Although the certified mail receipts show the letter was received

on December 18, 2017, as of May 1, 2018, Mr. Dalton had not received a response.

53.     On April 6, 2018, Mr. Dalton left a voice mail message for Michael Dubus, GE

Energy Sr. Labor Counsel at its Atlanta, Georgia address in follow up to his December 13, 2017

letter.

54.     On May 1, 2018, Mr. Dalton wrote to Michael Dubus, GE Energy Sr. Labor Counsel

at its Atlanta, Georgia address to request that he respond to the December 13, 2017 letter by June 1,

2018.

55.     In late May 2018, Mr. Dalton received a letter from Katherine C. Morgan, Esq.,

Executive Labor & Employment Counsel for GE dated May 21, 2018.  The letter stated that it was in

response to Mr. Dalton's letters of December 13, 2017 and May 1, 2018.

56.     In the May 21, 2018 letter, Ms. Morgan explained that GE has denied Mr. Dalton's

request for correction of his classification asserting that the reason for the denial is that the benefits

he did receive as a result of being transferred to Aclara outweigh what he lost.  The letter did not

reference the terms of any plan documents, explain how GE came to its conclusion, or explain how

Mr. Dalton could appeal the determination. Also, particularly noteworthy is the fact that Ms. Morgan

did not say in her May 21, 2018 letter that Mr. Dalton's classification, as an employee in the Meter

division, was correct.

57.     In the May 21, 2018 letter, Ms. Morgan stated that had Mr. Dalton received "plant

closing benefits," they would not have included severance pay.  The letter did not reference the

section of the GE Job and Income Security Plan that governs severance or explain why Mr. Dalton

would not have been entitled to the severance pay laid out in Section 1.6.4 of the Job Loss Benefits

Handbook.

58.     Upon information and belief, many of Mr. Dalton's co-workers in the transformer

division received severance pay in accordance with the GE Job and Income Security Plan as

indicated in Section 1.6.4 of the Job Loss Benefits Handbook.

59.     On June 6, 2018, Mr. Dalton wrote to Ms. Morgan in response to her May 21, 2018 letter.  In his letter Mr. Dalton contested her assertion that the benefits he received as a result of the transfer to Aclara outweigh what he would have received under the GE Job and Income Security Plan and provided a list of benefits that he lost as a result of his misclassification and transfer to Aclara. He asked for a further, comprehensive review in consultation with Mr. Louis Kawalski, a GE human resources officer located out of Edward, New York.

60.     Mr. Dalton received a response letter from Ms. Morgan dated July 3, 2018 stating that the classification of Mr. Dalton as a Meter division employee would not be changed but that GE would be willing to settle the matter.

61.     On July 11, 2018, Mr. Dalton and Ms. Morgan spoke via telephone.  In an email dated July 11, 2018, Ms. Morgan affirmed GE's decision not to reconsider the misclassification.

62.     On October 22, 2018, Mr. Dalton sent a letter to the Secretary of the Pension Board, General Electric Company at its Norwalk, Connecticut location.  In his October 22 letter, Mr. Dalton conveyed his story of the misclassification, the effects that it has had on his family, the denials of his repeated requests for remedial action, and he requested that General Electric Company correct the error and restore his benefits.   As of the filing of this complaint, Mr. Dalton has not yet received a response.

63.     Because GE has refused to correctly classify Mr. Dalton as an employee who experienced job loss as a result of a plant closure, Mr. Dalton has been prevented from receiving the plant closure benefits to which he was entitled under ERISA.

**Count I**
**Benefits Due From**
**The GE Job and Income Security Plan**
**under ERISA, 29 U.S.C.§ 1132**

64.     Mr. Dalton realleges paragraphs 1 through 63 and incorporates the same by reference

as if fully set forth herein.

65.     This Court must conduct a plenary proceeding in evaluating General Electric Company's and the GE Job and Income Security Plan's decision to deny Mr. Dalton job loss/plant closure benefits.

66.     Mr. Dalton was a full-time, hourly production employee in the transformer division of General Electric's Somersworth, New Hampshire location.

67.     The GE Somersworth location also had a meter division.

68.     In the Fall of 2015, GE announced that it would be selling its meter division to Aclara and that employees who worked for the meter division would have their employment transferred to Aclara effective January 1, 2016.

69.     On November 18, 2015, Mr. Dalton learned that his pension and welfare benefits would be treated in accordance with terms governing "transfer employees" with Special Benefit Protection as a "transfer employee" as indicated in a pamphlet given to him on that same day.

70.     Over his 38 years of employment with GE, Mr. Dalton spent the vast majority of his time working as a production employee in the meter division and his has time records/reports that support that assertion.

71.     Mr. Dalton's classification as a meter division employee was not supported by the facts.

72.     The transformer division was being moved to a location in Florida.

73.     Other production employees in the transformer division who performed the same tasks as Mr. Dalton received plant closure job loss benefits enumerated in the GE Job and Income Security Plan including a Severance Benefit pursuant to Section 1.6.4 of the GE Job and Income Security Plan summary plan description dated January 1, 2012.

74.     There was/is no factual or legal basis to have classified Mr. Dalton as an employee in the meter division.  Therefore, his transfer to Aclara and GE's refusal to provide him with the plant

closure job loss benefits for which he would have been eligible under the GE Job and Income

Security Plan was not supported by the law or facts and was wrongful.

75.     Mr. Dalton sent numerous emails and letters to various offices within General

Electric Company in an attempt to get the misclassification corrected.

76.     On November 23, 2015, Mr. Dalton received an email from Ed Myszka confirming

that, Mr. Dalton would be treated as a meter division employee and his employment would be

transferred to Aclara.

77.     Since that time, Mr. Dalton has made repeated and continued efforts to try to get the

misclassification corrected to no avail.

78.     Section 1.6.4 of the GE Job and Income Security Plan summary description dated

January 1, 2012 states:  "**If you are within 12 months of reaching age 60** – on your plant closing

termination date, you can receive severance benefits, and your continuous service will be preserved

until you become eligible to retire at age 60 (unless you retire earlier)" (emphasis in original).

79.     Mr. Dalton was 59 ½ years old when they misclassified him and transferred his

employment to Aclara.

80.     The amount of severance is determined by your length of service.  Section 1.6.4 of

the GE Job and Income Security Plan summary description dated January 1, 2012 states "**If you have**

**15 or more years of continuous service . . .**Then your lump-sum severance benefit equals:  2 weeks

of pay for each full year of your continuous service, plus ½ of a week of pay for each additional 3

months of your continuous service" (emphasis in original).

81.     Mr. Dalton estimates that if he had not been mistakenly transferred to Aclara, his

lum-sum severance would have been approximately $87,000 pursuant to Section 1.6.4 of the GE Job

and Income Security Plan summary plan description handbook dated January 1, 2012.

82.     Mr. Dalton also lost substantial value in his Regular Supplement and all of his

Special Supplement pension benefits, as well as value in his health, dental, and life insurance

benefits.  See Section 1.7 et seq. of the GE Job and Income Security Plan summary plan description handbook dated January 1, 2012.

83.     Mr. Dalton is entitled to relief against the GE Job and Income Security Plan to recover benefits due to him under the GE Job and Income Security Plan and to enforce his rights to benefits under that plan and to clarify his rights to future benefits under that plan pursuant to 29 U.S.C. § 1132 (a).

**Count II**
**Benefits Due From**
**The GE Health Benefits for Production Employees**
**Plan under ERISA, 29 U.S.C.§ 1132**

84.     Mr. Dalton realleges paragraphs 1 through 83 and incorporates the same by reference as if fully set forth herein.

85.     This Court must conduct a plenary proceeding in evaluating General Electric Company's and the GE Health Benefits for Production Employees' plan's (the "GE Health Plan") decision to deny Mr. Dalton benefits under the GE Health Plan to which he should have been entitled and should continue to be entitled.

86.     If he had been properly classified as an employee who experienced job loss due to plant closure, Mr. Dalton would have received the welfare benefits including health, dental, and life insurance enumerated in Section 1.7 et. seq. of the GE Job and Income Security Plan summary plan description handbook dated January 1, 2012 and in Section 1.8 of the benefits handbook entitled "Retiree Health and Other Benefits" dated January 1, 2012 .  He did not receive that benefit.

87.     The decision to deny Mr. Dalton plant closure job loss benefits as required conjunctively by the GE Job and Income Security Plan and the GE Health Plan as enumerated in the GE Job and Income Security Plan was not supported by the substantial evidence, was wrongful, and was not in compliance with applicable laws.

88.     Mr. Dalton is entitled to relief against the GE Health Plan to recover benefits due to

him and to enforce his rights to benefits under that plan and to clarify his rights to future benefits

under that plan pursuant to 29 U.S.C. § 1132 (a).

## Count III
## Benefits Due From
## The GE Pension Plan
## under ERISA, 29 U.S.C.§ 1132

89.     Mr. Dalton realleges paragraphs 1 through 88 and incorporates the same by reference

as if fully set forth herein.

90.     This Court must conduct a plenary proceeding in evaluating General Electric

Company's and the GE Pension Plan's decision to deny Mr. Dalton benefits under the GE Pension

Plan.

91.     Pursuant to Section 3.3.6 of the summary plan description entitled "Retirement

Income Benefits" date January 1, 2012, Mr. Dalton was fully vested in his GE pension because he

had completed more than five years of Pension Qualification Service.

92.     Because of being misclassified as a meter employee and transferred, Mr. Dalton lost

value in his Regular Supplement and lost all of his Special Supplement as enumerated in Sections

3.4.9 and 3.4.10 of the Ge Pension Plan summary plan description entitled "Retirement Income

Benefits" dated January 1, 2012.

93.     Pursuant to Section 3.4.9 of the Ge Pension Plan summary plan description entitled

"Retirement Income Benefits" date January 1, 2012, the amount of the monthly Regular Supplement

is determined by multiplying the employee's years of Pension Benefits Service by $20.00.

94.     Pursuant to Section 3.4.10 of the Ge Pension Plan summary plan description entitled

"Retirement Income Benefits" date January 1, 2012, in addition to the Regular Supplement, an

employee who retires directly from the company at age 60 or older with at least 25 years of Pension

Qualification Service is entitled to receive the Special Supplement until the employee reaches the age

entitling the employee to receive 80% of his social security benefits as defined in Section 3.4.8 of the

summary plan description.

95.     Pursuant to Section 3.4.10 of the Ge Pension Plan summary plan description entitled "Retirement Income Benefits" date January 1, 2012, the amount of the Special Supplement monthly payment is $400 per month.

96.     Mr. Dalton was born on June 22, 1956.

97.     Pursuant to Section 3.4.8 of the Retirement Income Benefits handbook dated January 1, 2012 the age at which Mr. Dalton is entitled to receive 80% of his social security benefits is 63 years and 4 months.

98.     If Mr. Dalton had been properly classified as a transformer division employee, he would have continued working for GE until July 1, 2016 when the other transformer employees experienced the plant closure job loss Mr. Dalton would have been eligible to choose the Special Supplement Benefit Option (SSBO).  Under the SSBO, Mr. Dalton would have receive the $400 per month special supplement payment from age 60 through age 63 and 4 months.

99.     Mr. Dalton lost $16,000 by not being entitled to receive the Special Supplement.

100.    If Mr. Dalton had not been misclassified and transferred to Aclara, he could have chosen Preferential Placement pursuant to Section 1.8 of the GE Job and Income Security Plan.

101.    If Mr. Dalton had chosen the Preferential Placement option, he could have secured another job with General Electric Company and continued his years of service.

102.    Had Mr. Dalton secured another job with GE, his Pension Benefits Service time would have been higher at retirement age and he would now be receiving a larger monthly Regular Supplement benefit.

103.    If Mr. Dalton had secured another position with GE, he could have worked for six months until age 60 so that upon retirement he would have been eligible to receive the Special Supplement.

104.     By being classified as a meter employee who was transferred, Mr. Dalton lost the

right to choose the Special Early Retirement Option (SERO) enumerated at Section 1.9.2 of the GE

Job and Income Security Plan summary plan description handbook dated January 1, 2012.

105.     The SERO option would have allowed Mr. Dalton to retire immediately at age 59 ½

without reduced benefits.  Because he was not classified as an employee who experienced plant

closure job loss, he was not able to take the SERO option and lost 6 months of his pension.

106.     The decision to purposefully misclassify Mr. Dalton as a meter employee, so as to

cause him to lose value in his Regular Supplement, all of his Special Supplement, be ineligible to

choose the SERO option or the SSBO option was not supported by the substantial evidence, was

wrongful, and was not in compliance with applicable laws.

107.     Mr. Dalton is entitled to relief against the GE Pension Plan to recover benefits due to

him and to enforce his rights to benefits under that plan and to clarify his rights to future benefits

under that plan pursuant to 29 U.S.C. § 1132 (a).

**Count IV**
**Breach of Fiduciary Duty**
**against General Electric Company**
**under ERISA 29 U.S.C.§ 1002 and 1104**

108.     Mr. Dalton realleges paragraphs 1 through 107 and incorporates the same by

reference as if fully set forth herein.

109.     The Fiduciary Duty provisions of ERISA state as follows:

"(1)Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall
discharge his duties with respect to a plan **solely in the interest of
the participants and beneficiaries** and—
(A)for the exclusive purpose of:  (i)  providing benefits to participants and their
beneficiaries; and (ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then
prevailing that a prudent man acting in a like capacity and familiar with such matters
would use in the conduct of an enterprise of a like character and with like aims;
(C) by diversifying the investments of the plan so as to minimize the risk of large
losses, unless under the circumstances it is clearly prudent not to do so; and
(D) in accordance with the documents and instruments governing the plan insofar as
such documents and instruments are consistent with the provisions of this subchapter

and subchapter III. * * *".

29 U.S.C. § 1104 (emphasis added).

110.    ERISA states further that:

"Except as otherwise provided in subparagraph (B), **a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan** or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) **he has any discretionary authority or discretionary responsibility in the administration of such plan.** Such term includes any person designated under section 1105(c)(1)(B) of this title."

29 U.S.C. § 1002 (21) (emphasis added).

111.    General Electric Company as plan administrator had discretionary authority over the GE Job and Income Security Plan, the GE Pension Plan, and the plan entitled GE Health Benefits for Production Employees.

112.    As the administrator of the plans General Electric Company had a fiduciary duty to Mr. Dalton not to knowingly or purposefully interfere with his right to receive benefits under the GE benefit plans governed by ERISA including but not limited to the GE Job and Income Security Plan, the GE Pension Plan, and the plan entitled GE Health Benefits for Production Employees.

113.    General Electric Company knowingly breached its fiduciary duty to Mr. Dalton as a participant in the GE Job and Income Security Plan by knowingly misclassifying him as an employee in the Meter division so as to avoid having to extend benefits to him under the GE Job and Income Security Plan.

114.    Joyce M. Vachon a Human Resources Manager of General Electric Company – who was brought in to the plant to effectuate the closing – was an agent of General Electric company who had discretionary authority over the classification of Mr. Dalton as a Meter division employee.

115.    Joyce M. Vachon was a fiduciary under ERISA because, on behalf of GE, she had discretion over administration of the GE Pension Plan and the GE Job and Income Security Plan by

18

choosing which employees to classify in which divisions.  Those classifications directly affected the benefits that the classified employees would receive under the benefit plans.

116.    Joyce M. Vachon, acting within the scope of her employment as a fiduciary as defined by ERISA, knowingly misclassified Mr. Dalton as an employee in the Meter division to avoid General Electric having to extend benefits to him under the GE Job and Income Security Plan.

117.    Edward J. Myszka as the Senior VP of the GE Meter Business at the General Electric Somersworth, New Hampshire location also was an agent employee of General Electric Company who had discretionary authority over the classification of Mr. Dalton as a Meter division employee.

118.    Edward J. Myszka, acting within the scope of his employment as a fiduciary as defined by ERISA, knowingly misclassified Mr. Dalton as an employee in the Meter division to avoid General Electric having to extend benefits to him under the GE Job and Income Security Plan.

119.    The decision to misclassify Mr. Dalton as a Meter Division employee when it was not supported by the facts was not acting "solely in the interest of the participant, Mr. Dalton because it wrongfully caused him to lose pension, severance, health, dental, and life insurance benefits for which he has incurred substantial financial loss.

120.    Mr. Dalton is entitled to relief against General Electric Company, which was a fiduciary under ERISA, for denied benefits and monetary damages because General Electric Company through its agents knowingly or purposefully breached its fiduciary duty to Mr. Dalton. See 29 U.S.C. § 1104.

**Count V**
**Interference with Protected Rights**
**Against Defendants General Electric Company as Fiduciary/Plan Administrator;**
**Edward J. Maszka, as Fiduciary; and Joyce Vachon, as Fiduciary**
**Plan under ERISA, 29 U.S.C.§ 1140**

121.    Mr. Dalton realleges paragraphs 1 through 120 and incorporates the same by reference as if fully set forth herein.

122.    ERISA states,

> "**It shall be unlawful for any person to discharge**, fine, suspend, expel, discipline, **or discriminate against a participant** or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. 301 et seq.], **or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act**. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act. In the case of a multiemployer plan, it shall be unlawful for the plan sponsor or any other person to discriminate against any contributing employer for exercising rights under this chapter or for giving information or testifying in any inquiry or proceeding relating to this chapter before Congress. The provisions of section 1132 of this title shall be applicable in the enforcement of this section." 29 U.S.C. § 1140 (emphasis added).

123.    General Electric Company served as the Plan Administrator for the GE Job and Income Security Plan, the GE Pension Plan, and the plan entitled GE Health Benefits for Production Employees. See Section 2.1.11 of the benefits handbook entitled "Eligibility and Administrative Information" dated January 1, 2012.

124.    General Electric Company was Mr. Dalton's employer for more than 38 years.

125.    General Electric Company's managers for whom Mr. Dalton worked and with whom he communicated about this claim, knew or should have known that Mr. Dalton worked the vast majority of his 38 years of service as an hourly production employee in the transformer division.

126.    General Electric Company's managers for whom Mr. Dalton worked and with whom he communicated about this claim incorrectly classified Mr. Dalton as a meter division employee and transferred his employment when he was six months from eligible retirement age.

127.    General Electric Company's managers for whom Mr. Dalton worked and with whom he communicated about this claim purposefully misclassified Mr. Dalton in order to avoid having to extend benefits to him under the GE Job and Income Security Plan.

128.    General Electric Company's act of purposefully misclassifying Mr. Dalton as a Meter

division employee interfered with his rights under ERISA by making him ineligible for the benefits provided under the GE Job and Income Security Plan (and therefore also under the GE Pension Plan and the GE plan entitled GE Health Benefits for Production Employees) violated 29 U.S.C. § 1140.

129.    Mr. Dalton is entitled to relief against the General Electric Company to recover benefits due to him and for other damages pursuant to 29 U.S.C. § 1140 and the civil enforcement provisions included in Section 1132.

### Count V
### Award of Attorneys' Fees and Costs

130.    Mr. Dalton realleges paragraphs 1 through 129 and incorporates the same by reference as if fully set forth herein again.

131.    As the GE Job and Income Security Plan, the GE Pension Plan, and the plan entitled GE Health Benefits for Production Employees, and General Electric Company as the Plan Administrator for those plans, have caused Mr. Dalton to incur attorneys' fees and costs, and will cause him to incur additional fees and costs, Mr. Dalton is entitled to recover under 29 U.S.C. § 1132 (g), costs of this litigation, including reasonable attorneys' fees and interest at the New Hampshire statutory rate on all back due benefits.

**WHEREFORE**, the plaintiff, James R. Dalton, demands relief and judgment, jointly and severally, against the defendants GE Job and Income Security Plan; the GE Pension Plan; the plan entitled GE Health Benefits for Production Employees; General Electric Company; Edward J. Myszka; an Joyce Vachon as follows:

1.    In an amount of damages to be determined by this Court, plus pre-judgment interest, post-judgment interest, costs and reasonable attorneys' fees allowed by statute or otherwise;

2.    Injunctive relief declaring the rights and duties of the plaintiff and defendants with respect to past benefits owed to the plaintiff, and future benefits to be paid to the plaintiff; and for

3.    For such other legal or equitable relief as this Court deems just and proper.

**JAMES R. DALTON**

By his attorney,

Dated:  November 16, 2018

/s/ Cheryl C. Deshaies
Cheryl C. Deshaies, Esq.
NH Bar#12848
Law Office of Cheryl C. Deshaies
24 Front Street, Suite 111
P.O. Box 648
Exeter, New Hampshire 03833
Telephone:  (603) 580-1416
Facsimile:  (888) 308-7131
Email:  cdeshaies@deshaieslaw.com